# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TIMBERLAB HOLDINGS, INC.,** | COURT NO.: 26-01194 |
| Plaintiff, | |
| VS. | COMPLAINT |
| **U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT,** in his official capacity as Commissioner of U.S. Customs and Border Protection**;** and the **UNITED STATES OF AMERICA,** | |
| Defendants. | |

## COMPLAINT

1.  Timberlab Holdings, Inc. ("Plaintiff") is a U.S. based importer of merchandise subject to the challenged duties.

2.  Since taking office on January 20, 2025, President Trump has

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

declared several national emergencies and imposed numerous tariffs through a series of executive orders., invoking the International Emergency Economic Powers Act ("IEEPA") as authority for such actions. President Trump claimed that the IEEPA grants him authority to impose tariffs.

3. President Trump imposed new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on its imported goods.

4. Multiple cases have been filed challenging the legality of these tariffs. This Court and the Federal Circuit have held that IEEPA does not authorize these tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). The Supreme Court heard oral argument in *V.O.S. Selections* and a companion case arising out of the U.S. District Court for the District of Columbia on November 5, 2025. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

5. On February 20, 2026, the Supreme Court affirmed the decisions of this Court and the Federal Circuit, ruling that the IEEPA does not authorize the disputed tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026). As a

Page 2 -     COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

result of this ruling, more than $175 billion dollars of tariff collections are subject to potential refunds.

6. To date, no special mechanism or procedure has been created to facilitate or streamline the distribution of refunds in response to the Supreme Court's ruling, nor to ensure that the refunds are properly distributed.

7. This separate action is necessary, because importers that have paid IEEPA duties, including Plaintiff, are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment and judicial relief.

8. This lawsuit is being filed to preserve Plaintiff's claim for refunds until a mechanism is established that ensures that refunds are properly distributed.

9. Accordingly, for itself, Plaintiff seeks a full refund from Defendants of all IEEPA duties Plaintiff has already paid as a result of the executive orders challenged in this lawsuit.

## PARTIES

10. Plaintiff, Timberlab Holdings, Inc., is a U.S. Company, incorporated in Delaware, that imports goods from foreign countries.

11. Defendant United States Customs and Border Protection is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or

Page 3 -   COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

duties and taxes on goods imported into the United States.

12. Defendant Rodney S. Scott is the Commissioner of United States Customs and Border Protection and is sued in his official capacity.

13. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

14. Defendants are referred to collectively in this complaint as "CBP".

## JURISDICTION

15. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

16. This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

17. Plaintiff has standing to bring this lawsuit because it purchased and/or imported goods into the United States from foreign countries subject to the

Page 4 -    COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

unlawful IEEPA duties, as implemented and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiff has paid IEEPA duties via payments to vendors that serve as importers of record ("IOR Vendors") and incurred increased costs, and thus has suffered injury caused by those orders. For certain imports, Plaintiff is listed as "Consignee." 19 CFR § 142.3(a)(6). Declaratory and injunctive relief from this Court would redress those injuries.

## GENERAL PLEADINGS

### I. Executive Actions under the International Emergency Economic Powers Act ("IEEPA")

#### A. President Trump invokes IEEPA as authority to levy a series of tariffs.

18.     On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs, and for each set of tariffs the President claimed that they were justified under IEEPA because of a purported national emergency. Collectively, these are referred to in this complaint as the "Trafficking Tariff Orders."

19.     The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* (Feb. 7, 2025), ("Mexico Tariff Order"), imposed an additional 25 percent tariff on the import of goods from Mexico. The President's claim of emergency powers was

Page 5 -    COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

20. The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025) ("Canada Tariff Order"), declared an emergency because of opioid trafficking, and also imposed a 25% tariff, with certain exceptions.

21. Finally, the executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9121 (Feb. 1, 2025) ("China Tariff Order"), also declared an emergency because of opioid trafficking, declaring that the "sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest,

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

22. The China Tariff Order imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

23. Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025) ("February 5 Amendment").

24. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20% and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis." *Id.*

25. On April 2, 2025, citing trade deficits with our trading partners as its own national emergency, Executive Order 14257 was issued, *Regulating*

Page 7 -     COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

*Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id*.

26. The Reciprocal Tariff Order asserts that "U.S. trading partners' economic policies … suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *See* Reciprocal Tariff Order.

27. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14259*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low- Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

28. The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90

Page 8 -     COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

Fed. Reg. 15,625 (Apr. 15, 2025). Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

29.     In implementing his Executive-Order-based tariff regime, the President directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs be entered under new tariff codes.

30.     On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). As discussed below, the Court held the orders were unlawful and both the Federal Circuit, sitting *en banc*, and the Supreme Court, affirmed.

### B.     CBP's implementation of the unlawful tariffs

31.     CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

32.     In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United

Page 9 -     COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

33. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

34. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

35. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

Page 10 -    COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

## C. Liquidation

36. Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

37. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

38. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

39. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

40. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

41. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. §1504(a). Typically, liquidation is done automatically by operation of

Page 11 -   COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website. 1504(a). Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

42. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer or drawback claimant's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii). Once liquidation has occurred, and *if* the liquidation is protestable, a protest contesting the liquidation may be filed within 180 days, asking the CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.2 But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

43. This Court has decided that a § 1581(a) protest of a liquidation of an entry subject to IEEPA duties would be futile because CBP's collection of such duties is purely ministerial. *See AGS Company Automotive Solutions et. al v. U.S. Customs and Border Protection, et al.*, No. 25-00255 (Slip Op. 25-154), at 7 ("In such a case, a § 1581(a) protest would be futile because 'all that Customs is authorized to do is collect the' duty") (citation omitted).

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

## II. The United States Supreme Court ruled that IEEPA does not authorize the President to impose tariffs.

44. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

45. None of these statutes authorizes the President to impose tariffs. Of these, it is IEEPA alone that the President and CBP are leaning on to impose and collect the EEPA duties. IEEPA does not authorize what the Challenged Tariff Orders seek to impose.

46. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the Plaintiff in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

47. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

48. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump,* 149 4th 1312 (Fed. Cir. 2025), *cert. granted,* No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

49.     In a separate lawsuit, also filed by group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

50.     That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, and the Supreme Court held oral argument on November 5, 2025.

51.     On February 20, 2026, the Supreme Court issued its decision, ruling that the IEEPA does not authorize the Plaintiff to impose tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026). In that decision, the Supreme Court explained that "[w]hen Congress has delegated its tariff powers, it has done so in explicit terms, and subject to strict limits," and the "IEEPA contains no reference to tariffs or duties." The Court further concluded that the IEEPA's grant of authority to the President to "regulate . . . importation" falls short of the express delegation of authority required to give the President the power to impose tariffs.

Page 14 -   COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

### III.    Plaintiff paid preliminary IEEPA duties

52. As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders via IORs.

STATEMENT OF CLAIMS

COUNT I

(THE CHALLENGED TARIFF ORDERS ARE ULTRA VIRES)

53. Plaintiff incorporates paragraphs 1-52 above by reference.

54. The Supreme Court in *Learning Resources, Inc. v. Trump* explained, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency; it does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

55. The Challenged Tariff Orders are the same as those struck down in *Learning Resources*. They purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA. For the reasons set forth in *Learning Resources, Inc. v. Trump*, those Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

Page 15 -   COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

56. This Court should follow the binding precedent of the Supreme Court, declare the Challenged Tariff Orders unlawful as to Plaintiff, and order the refund of all IEEPA duties collected from Plaintiff, directly and indirectly through its IOR Vendors, with interest as provided by law.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a) Order the United States to refund to Plaintiff the IEEPA duties collected on entries, with interest as provided by law; and

b) Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action;

c) Grant such further relief as this Court deems proper.

///

///

///

///

///

///

///

///

Page 16 - COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

Dated this 25th day of February, 2026.

        Respectfully submitted,

        SCHWABE, WILLIAMSON & WYATT, P.C.

By:   */s/ Nika Aldrich*
      Nika Aldrich, OSB No. 160306
      Email: NAldrich@schwabe.com

      1420 5th Ave., Suite 3400
      Seattle, WA 98101
      (503) 796-2494

      *Attorneys for TIMBERLAB HOLDINGS, INC.*

Page 17 -    COMPLAINT

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900